Estate of Andrew Scott Neilson, deceased, Jean Harding, Administratrix v. Commissioner. Dorothy Stewart Neilson v. Commissioner.
Estate of Andrew Scott Neilson v. Commissioner
Docket Nos. 14324, 14325.
United States Tax Court
1948 Tax Ct. Memo LEXIS 89; 7 T.C.M. (CCH) 666; T.C.M. (RIA) 48185; September 21, 1948
*89 Harold E. Haven, Esq., Mills Tower, San Francisco, Calif., for the petitioners. Leonard A. Marcussen, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion Respondent determined deficiencies in the amount of $1,841.81 in each of the income tax returns filed by Andrew Scott Neilson and Dorothy Stewart Neilson on the community property basis for the year 1944. These deficiencies resulted from respondent's determination that "alleged expenses of $3,050 incurred in connection with earning of partnership income" should be disallowed for lack of substantiation, and his determination that "for lack of adequate records there is included in taxable income unaccounted for bank deposits in the amount of" $6,993.31. The income tax return of Andrew Scott Neilson reported income according to a schedule attached thereto, which schedule reads as follows: Fed. with-
Income from Salaries
Salary
holding tax
Gardner Mfg. Co., 2709 Union St., Oakland, Calif.
$ 600.00
$ 106.00
Berkeley Steel Construction Co., 2nd & Camelia Sts., Berkeley, Calif.
690.00
Pacific Marine Contractors, 100 Sacramento St., San Francisco
2,359.20
404.80
Total
$3,649.20
$ 510.80
Reported by -
Andrew Scott Neilson
$1,824.60
255.40
Dorothy Stewart Neilson
1,824.60
255.40
Total
$3,649.20
$ 510.80
Income from Partnership -
(General Asbestos Company, 100 Sacramento St., San Francisco, Calif.)
Andrew Scott Neilson, distributive share of partnership income
$14,974.02
Deduct expenses incurred in earning partnership income not reimbursed
by company -
Use of automobile (100% for business) 24,000 miles at 5"
$1,200.00
Entertainment expenses
850.00
Expenses of living away from home
1,000.00
3,050.00
Net income from partnership
$11,924.02
Reported by -
Andrew Scott Neilson
5,962.01
Dorothy Stewart Neilson
5,962.01
$11,924.02
*90 A similar schedule was attached to the return of petitioner Dorothy Stewart Neilson. In the petitions filed herein it was alleged that the Commissioner erred in making any adjustments to the income of Andrew Scott Neilson and Dorothy Stewart Neilson for the year 1944; that the Commissioner erred in adding to the income of the community the sum of $6,993.31; and that the Commissioner erred in disallowing business expenses of the community in the sum of $3,050. Paragraph 5 (b), of the petition, which relates to the disallowance of the business expenses of Andrew Scott Neilson, reads as follows: "(b) That Andrew Scott Neilson during the calendar year 1944, in connection with the partnership business of the General Asbestos Company expended the sum of at least $850.00 in entertainment expenses, and at least the sum of $1,000.00 for living expenses while away from home and that he drove his automobile in connection with said business at least 24,000 miles; that a fair allowance for the use of said automobile in connection with said business if 5" per mile or the sum of $1,200.00; that said Andrew Scott Neilson was not reimbursed for any of said expenditures which expenditures were *91 made on behalf of the community of himself and his wife, your petitioner, and that your petitioner is entitled to a deduction for the calendar year 1944, of business expenses in the sum of $1,525.00." By amended answer respondent alleged that the taxable community income over and above the amount reported was not $6,993.31 as determined by him, but was in an amount in excess thereof. At the end of the hearing herein on March 29, 1948, petitioners moved orally to amend the petitions to conform to the proof, and on June 21, 1948 filed herein a written motion to amend the petitions to conform to the proof by amending paragraph 5 (b) of each petition to read as follows: "(b) That prior to February 2, 1944, Andrew Scott Neilson engaged in the business of securing and performing subcontracts for the building of ships in the State of California; that to assist him in financing and performing two such subcontracts which he secured, he caused to be formed two partnerships known as Pacific Marine Contractors and General Asbestos Company, in which he had a distributive share of the profits in consideration of his having secured said contracts and managing the performance of said contracts; *92 that during the year 1944, Andrew Scott Neilson expended for ordinary and necessary expenses in connection with said business of securing and performing the aforesaid sub-contracts, none of which expenditures were expenses of either of the aforesaid partnerships, the sum of approximately $1,950.00 for travel, living and entertainment expenses while away from home, and the sum of approximately $6,750.00 for general entertainment expense. Said Andrew Scott Neilson further drove his automobile in connection with said business during said year, approximately 19,000 miles at a cost to him of approximately $950.00." Petitioners' motions to amend to conform to proof have been denied by order of ever date herewith. Findings of Fact During the taxable year 1944 Andrew Scott Neilson and Dorothy Stewart Neilson were husband and wife, residing at Orinda, California. They filed separate income tax returns on the community property basis with the collector for the first district of California in San Francisco. The husband earned all of the income and made the expenditures in question. The husband and wife were divorced in July, 1945. The husband died on August 4, 1946. From 1941 to 1943 *93 the decedent, Andrew Scott Neilson, was employed as production manager by Bethlehem Shipbuilding Co. of San Francisco, California. In 1943 he resigned this position and was employed by Gardner Manufacturing Co. of Oakland, California. In late 1943 the decedent resigned this position and decided to try to enter some business on his own behalf. His idea was that he might secure subcontracts in connection with war contracts for shipbuilding and repair on the West Coast, and the financial backing necessary to their performance. In February 1944 the decedent gained the promise of financial backing from one L. D. Reeder and a number of his associates. The tentative agreement between Neilson and the Reeder group was that L. D. Reeder would supply the capital through one of his associates, and another associate would furnish the labor and materials. Decedent was to secure the subcontracts and superintend the performance of these subcontracts. The decedent secured two types of subcontracts. The first was to scale ships; the second to insulate certain parts of ships with asbestos. Pursuant to the arrangement between Neilson and the Reeder group, two partnerships were formed - one to perform *94 each type of subcontract. The shipscaling was undertaken by the partnership of Pacific Marine Contractors which was organized April 1, 1944, and began operations on April 15, 1944. The second partnership was organized on August 1, 1944, and began operations on approximately August 15, 1944. This business was carried on under the name of General Asbestos Co., and its operation was the insulation of the ships with asbestos. This partnership will hereinafter be referred to as Asbestos. The partners of Asbestos and their respective interests are as follows: Decedent
90 per cent
Reeder
5 per cent
Mancini
5 per cent Reeder also financed this partnership, and Neilson superintended its work. During the year 1944, Neilson sought other contracts or subcontracts, but without success. He was also employed during the year as a salesman for L. D. Reeder Co. Prior to August 1, 1944, Neilson made ten trips to Los Angeles. On three of these trips he was accompanied by his wife, and on two of them he either went or returned via Palm Springs. The principal purpose of these trips was a business one. He wished to consult with Reeder and others with regard to a number of business *95 matters, one of which was the contracts or subcontracts which led to the organization of Asbestos, and the steps incident to the formation of that partnership. No record was kept by Neilson as to the amount of his traveling and entertainment expenses incurred in connection with these trips, nor was any attempt made to segregate any part of these expenses as incident to the subcontracts later performed by Asbestos, or as incident to the formation of that partnership. The approximate amount of such expenditures (including automobile expenses) made by Neilson prior to the formation of the partnership Asbestos, and incident to the subcontracts later performed by that partnership, and incident to its formation, was $600. After the formation of the partnership Asbestos, Neilson incurred and paid for the benefit of that partnership certain expenses in an undetermined amount on account of traveling and entertainment. Similar expenditures also in an undetermined amount were made by him in connection with other business enterprises including the partnership Pacific Marine Contractors. As to some expenditures made by him for the benefit of the partnerships he was reimbursed by the partnerships. *96 Neilson received income during the taxable year in the sum of $5,728.06, which was not reported in either his return or that of petitioner Dorothy Stewart Neilson. Opinion KERN, Judge: Two general questions are presented for our decision in the instant proceeding: (1) the amount of income, if any, received by decedent, Andrew Scott Neilson, during the taxable year and not reported in the tax returns for the taxable year filed by him and his wife, and (2) the amount, if any, of expenditures made by Neilson during the taxable year on account of the use of an automobile, entertainment expenses and expenses of living away from home, all of which were incident to the business of the partnership Asbestos (of which Neilson was a partner), which are deductible by Neilson and his wife in their individual tax returns filed for the taxable year. The first question is entirely factual and is answered in our findings of fact made herein and set forth above. In so far as the second question is factual, it is impossible to answer with any degree of satisfaction. During the taxable year Neilson was engaged in the following activities: (1) seeking to establish himself in business and making *97 contacts looking toward this end, (2) forming two partnerships (General Asbestos Co. and Pacific Marine Contractors), (3) taking a prominent part in the conduct of the business of those partnerships, (4) acting as salesman for L. D. Reeder Co., and (5) seeking to obtain profitable contracts in connection with the war effort which might have been the basis for other partnership arrangements with the Reeder interests. During the taxable year, Neilson used his automobile in connection with his various activities and for personal purposes, and made expenditures for entertainment, for "tipping" workmen in the shipyards in order to induce them to do their duty in the war effort, and for traveling. With regard to some of these expenditures, he was reimbursed by the partnerships. It may be assumed that the partnerships, in their tax returns, took appropriate deductions on account thereof. The returns of the partnerships are not in evidence. It would be difficult to determine the amount of the expenditures above referred to; it would be even more difficult to determine what parts of the expenditures made by Neilson were personal and what parts were ordinary and necessary business expenses; *98 it is impossible on the record to determine what part of the expenditures were incident to the partnership business of Asbestos. As to the expenditures made by Neilson after the formation of the partnership Asbestos, it is unnecessary for us to attempt the impossible. These expenditures were made on behalf of the partnership. As we said in : "* * * the expenditures seem to have been made on behalf of the partnership, and, if they were ordinary and necessary expenses paid or incurred in the operation of any trade or business, it was the partnership business and not an individual business; therefore, the petitioner has not shown that he is entitled to the deduction of any expenditures on this account on his individual return." * * *
With regard to the expenditures made prior to the formation of the partnership Asbestos, and incident to its formation, we have, by a liberal application of the doctrine of , determined by a judicial guess sanctioned in that case, that the amount of such expenditures was $600, of which $300 should be allowed as a deduction to each petitioner. *99 As we have already indicated, petitioners filed herein motions to amend the pleadings in order to enlarge the issues which we may consider herein. It is conceded that the granting of these motions is not a matter of right, but is subject to the discretion of the Court. In consideration of all the facts shown by the record and the state of the pleadings at the time of the hearing herein, the motions to amend do not commend themselves to our discretion, and have been denied. Decision will be entered under Rule 50.